Good morning, and may it please the court, Peter Afrasiabi, pro bono appointed counsel on behalf of the appellant and the plaintiff, Mr. John White Astor. Your honors, there are two central issues, obviously, in this Rule 12 appeal, and they revolve around access and substantial similarity. The district court erred here on both fronts, and I want to start with the error on access. With respect to access, the district court's error was failing to acknowledge and then grapple with paragraphs 34 and 36 of the first amended complaint, and that's at page 111 of the record. In paragraphs 34 and 36, it's alleged that the plaintiff, who, and this is important, is a Hollywood insider, had given his treatment to Mr. Roundtree and Mr. McKinn, who are also insiders in Hollywood, one of the most famous actors in America and his agent. And it's alleged in paragraph 34 and 36 that Roundtree and McKinn, who had possession of the treatment, had direct contact and association with the defendant. And based on that direct contact and direct association, defendants had access to their. Where is that alleged, their direct relationship? Paragraph 34 and 36 on page 111 of the record, Your Honor. Now, these allegations in 34 and 36 are the access allegations in the complaint, and they were ignored by the district court. They were also ignored in the moving papers. Paragraph 34 was identified, though, to the district court in opposition as being an access allegation, and they are the quintessential. Those are the money allegations when it comes to access. The other stuff that the district court addressed  that had nothing to do with access and were obviously not related to the complaint. Obviously, very easily knocked down. Counsel, paragraph 34, which trust me, I think we've all read before this, because this is a key question. I agree with you. How do we get past Iqbal and Twombly, where this just says, I can show there was access? And the Supreme Court now requires a little bit more than that, usually, to get past 12b-6. How do we do that here? Your Honor, this satisfies the Copyright Act's substantive requirement that there be a reasonable possibility. And that's no different to Iqbal. Iqbal Twombly's elevation of the tide on pleading allegations, for all other allegations, are already substantive copyright law. There has to be a reasonably possible set of chain of events that can establish access. And when you say that an insider has given it to another insider, and that insider is directly associated with and in contact with the defendant, that is a reasonable possibility. Where's that allegation? I agree the allegation that your client gave the paperwork to, or gave the materials to, Mr. Rountree, that's clear. No doubt about that. It's that next jump. How does it get to Mr. Daniels and his crew? Where is that in the complaint? It's between 34 and 36, because 34 says there's direct contact and association between Rountree and McGinn. I think the point is whether that is merely a conclusory allegation that's not backed up by any factual allegations. When I'm looking at factual allegations in the complaint relating to access, there's an allegation that it was given to Nick Tully, who didn't give it to anybody else. And then also it was faxed to Richard Rountree and his agent. But it doesn't say who they give it to, if anyone at all. So I think, as I understand, what Judge Owens is getting at is the factual allegations that back up the conclusory claim that there was access in this case. Sure. It's not alleged that it was given on this day and this time to the person, because that's what discovery is for. But when you look at paragraph 36, it says more than just that the people who had it have contact with the defendants. It says that on information and belief, and based on the above allegations, including paragraph 34, defendants, therefore, had reasonable access to it. Those aren't just encanted phrases. Encanted phrases would just be, I wrote a script. I'm just some guy. I left it on a bench in Beverly Hills. The defendants live in Beverly Hills. Maybe they found it. And that would be sort of the bare possibility type set of facts that doesn't make out a proper claim. This is why this Court's LA Printext case is so important, because there, although it's a wide dissemination access case, there this court reversed the district court. And this court said, look, when the plaintiff is in a smaller network, it was a garment manufacturer in LA, and it disseminated its garments out into the LA area. And the defendants in LA, the court said, look, you've got this transactional set of facts that frames this in. And that's a lot like this case, because you're dealing with people on the inside. You're not dealing with just random strangers to scripts who may have left them lying somewhere. That's why Printext is very, very important, coupled with Art Attacks, because Art Attacks got before a jury on a chain of events set of facts that's far different to this. I mean, there's far less meat on the bone in Art Attacks, and that got before a jury in terms of the chain of access. And so that's why here, when you look at these allegations, that does satisfy an Iqbal Twombly plausibility standard. It satisfies copyright substantive law in terms of reasonable access and what's required. And it's for that reason, Your Honors, that access is pled, and there's no need, this case doesn't even need to get into the inverse ratio rule, because access is pled. Now, of course, if access isn't pled, the question then becomes, okay, is there striking similarity? And this gets to the second error, fundamentally, because this is a case where there is substantial similarity and there's striking similarity when you look at Metcalf. And this gets at the same type of error on the substantial similarity analysis, undergirds the district court's decision, the same error that undergirded the access decision, and that is the district court didn't pay attention to the facts. The district court ignores, in its order, a whole host of similarities on plot and character. It ignores outright some characters. Other characters, it focuses on only the most general-level trait. And it does this on all the objective criteria within the substantial similarity extrinsic test. And by doing that and focusing on only the most general, abstract-level similarities, it became a fait accompli that there would be a series of findings of Senefaire and generic and standard stock. But if you widen the lens out, it's cognizant of the fact that this is a literary work. This isn't sort of a musical composition work where there is potentially a very limited range of expression. This, under Mattel, is a literary work where there's a gazillion ways to make a movie or a television show about a black hip-hop billionaire. And so widening that lens and looking at all the similarities becomes very, very important because you start seeing plot and character similarities that are significant. They're not just dispersed random elements. There's an absolute pattern to the similarity. And here, you look at the plot. The district court said the plot's just about a rich guy with three kids. But that's not true, obviously. I mean, there is substantial plot information in the treatment that then overlaps with the episodic television show. It's about a man where we pick up his life story as he's made it, and he's a billionaire running a music media empire with three kids, all of whom have unique relational issues and traits. He's the protagonist. He himself, as a character, is developed in terms of it's based on the relationship with the kids. He approves of the one who's gonna try to run the business, disapproves of the ones who are doing other things, such as arts. You have an antagonist, and this is a massively important character that the district court just ignored. The antagonist in the treatment is this sort of a white antagonist who's got this sort of Italian mafioso type thing going. And in the defendant's work, we have Billy Beretti. And if your honors have watched the television show, he's sort of just the archetypal image from Hollywood about the Italian gangster-looking guy. And this is not just a competitive hatred. There's relational matter that's developed in the treatment between the two. They're not just competitors like Steve Jobs and Bill Gates, and they're out to dominate the world. There's a personal hatred between them, and this disappears in both works. And then you have this character whose life we've picked up who we explore that maybe he's not all that. I mean, our character, maybe there's a dark side to him. And in the treatment, it's alluded to because his family member, who he's literally had no contact with for 20 years, again, an identical fact to the defendant's work, emerges from prison on drug charges and comes with the capacity to blackmail the protagonist because he maybe isn't such a good guy. And this is explored through flashbacks. And then you add an additional layer in terms of the objective elements and substantial similarity. We add in that this isn't just dynasty camp soap opera. And the district court said, well, but it's just a false center fair. If you're gonna make a dynasty-type show, this is what happens. But there's no foundation or facts in the record to make that conclusion. Do you have an argument before the district court, an oral argument? There was no oral argument. The district court submitted it on the briefs, Your Honor. And generally, substantial similarity, isn't that a factual question? It is inherently a factual question, even more so when you're talking about a literary work where the derivative work is in a different medium. This is very substantial and we need factual development and ultimately experts who can contextualize the quantitative and qualitative significance of all these similarities. If you don't, sitting here today, there's known unknowns, there just are. Once you've been through discovery and you've had experts, you no longer have known unknowns. You all may agree or disagree with the experts, obviously, in terms of whether what they gave was valuable, but at least we have framed out the matter. And the court then, if it is to apply a summary judgment standard, can say, okay, I have expert testimony. I know the objective factors. We have compiled all the similarities and I have someone who was qualitatively and quantitatively. Why is an expert required in a case like this where the court can watch the empire show, the court's got the treatment, and the court can do an objective comparison of the ways in which they are similar and the ways in which they are different. In other words, the district court issued a reasoned decision in this case and pointed out the various ways in which the treatment differs or the show differs from the treatment. Do you take issue with any of the differences described by the district court? No, not at all. But the district court ignored all the- What would the expert really do in aiding the analysis under the extrinsic test of the ways in which they're different? The expert would focus on the similarities in expression and that's what the district court here ignored. The district court only focused on the dissimilarities and you need an expert to quantify what is the significance of the dissimilarities. A district judge, I mean, the Williams case makes clear that there's no presumption in the law that judges possess unique fluency in the underlying artwork of music. There's no reason to believe they possess the fluency about what's Santa Fe or what's generic, what isn't, in terms of this subject matter either. The same is true in the patent realm. Everyone recognizes that you need experts to explain underlying technologies. Well, here, the district court didn't issue a reasoned decision, we submit. You can't issue a reasoned decision if you don't actually address the similarities in terms of plot, characters, and the actual sequence of events that does exist, all of which, and this is where an expert helps, an expert can explain that in this art form, at this level of specificity, there is not prior art and there isn't the expectation that you would find this grouping of similarities in a literary work when it's translated to another medium. And that is something that a judge isn't imbued with just the knowledge of knowing by virtue of being a judge sitting at district court. This is why it's very important to develop a factual record. So let me ask you, was leave to amend requested in this case? It was and it was denied. Okay, so if you were given leave to amend the complaint, to go back to the reasonable access prong, what would you, how would you amend those paragraphs 34 and 36? I'm not sure there would be any additional facts on paragraphs 34 and 36. Amendment could occur with respect to illuminating why there are more similarities than that we're even batted about in the briefs. More could be illuminated about how this is a novel piece of creation that exists without prior art to sort of tether the bounds of it. But the reality here is that factual record has to be developed in order for us to know the significance of all of these factors. And that's why this court's Metcalfe case, I mean, this case really is like Shaw, where there's just protected expression, there's similarity on a lot of the factors, it should go to a jury. Or the Star Wars case, which is a very important case. At least my view, make it to summary judgment. Absolutely, because by the time you get to summary judgment, you've filled out that factual record. And if you present experts, great, maybe they have meaning. And if you don't, that's significant too. And in funky films- But you still have to show copying. So at some point, you'd have to show that there was actual copying. Absolutely, but that's why discovery is so important. If you plead this chain between this network of people inside, that gives rise to a reasonable possibility. And you can't say as a matter of law, it's literally inconceivable that there could have been that type of copying and access. That's why discovery is needed. And if in discovery, it's borne out that this thing literally just evolved organically, they have the affirmative defense of independent creation that can be teed up. Metcalfe is very, very important here, Your Honor, because even if you don't see this as Shaw or Star Wars, and the Star Wars case, I urge this court to go read. It didn't get enough attention in our briefings, but it's a court, a decision by this court that demanded a case go to trial comparing Star Wars to Battlestar Galactica. It's cited in our briefs. It's a 20th century Fox case. The 13 similarities there are more general than the similarities here. But if you don't accept that expression, then we submit you have to look at this case as being comparable to Metcalfe, where there's a concrete pattern as opposed to randomness. And that judge goes to where an expert's relevant also. The conclusion that these similarities are just disparate random events that could happen at any time is something that may or may not be true depending upon what an expert says. And an expert can contextualize this and say, this is a concrete pattern. The same way that this court in Metcalfe said, far less, on a far thinner record of similarities between plot and characters, this court said it was not just substantially similar, but said it was strikingly similar. I mean, this is this court's only decision that's held a fact pattern as striking. And that was it. And so we submit that this is why the court has to get to summary judgment. I see I'm out of time. And if the court has any further questions, I'd submit and hope that maybe you'd give me the grace for a couple minutes. All right, thank you, counsel. Thank you very much. Thank you. Thank you, Your Honors. May it please the court. My name is Linda Burrow. I represent the appellees. Appellant is essentially asking you to impose a rule that substantial similarity could never be decided on a motion to dismiss. That any copyright infringement claim involving literary works requires expert testimony. That would impose a sea change in the law of this circuit and in the law across the country, undoing decades of law dating back before Christensen, which was 1945. And in fact, this court has already rejected this argument at least three times this year, in Rentmeester and in affirming 12b-6 dismissals in Silence and Abdullah. Now, and the appellant offers no reason why the court should rewrite the law now. I'll address access first, because I think appellant's counsel actually made a critical admission that resolves the access issue, which is this. The complaint does not actually say what appellant said. What the complaint says is that plaintiffs are confident to be able to show alleged creators, executive producers, and or individuals associated with Empire had direct or indirect or association with one or more persons who had a copy of the unique and self-described groundbreaking treatment of King Solomon. And then in paragraph 36, plaintiff alleged that defendants had reasonable access, which is a conclusory statement. Under Twombly and Iqbal, we need facts. On this, on these bare bones of access. And there are no facts. A pretty well written complaint by someone who was pro se, writing a copyright infringement action complaint. Don't you think? I mean, I think so. I think I would agree as a pro se complaint, this is a good complaint. It's important to remember though, that during the motion to dismiss stage below, plaintiff was represented. And plaintiff said- But they had to deal with this complaint. And they asked for leave to amend it. Correct. However, they also said in their briefing below, that they could only speculate as to how defendant gained access to his work. Now, nothing prevented the plaintiff from doing the reasonable investigation necessary to articulate some facts. He- But wouldn't these facts in particular would be something that would be known to the defendant, but not necessarily known to the plaintiff at this stage? Potentially at some point. However, the plaintiff does not even allege whether Mr. Roundtree or Mr. McGinn, his manager, who he gave it to. And those facts are in the plaintiff's control. Mr. He alleges that Mr. Roundtree is his friend. He alleges who he gave it to. And the district court seemed to say that he didn't, based on those facts, that he didn't give it to anybody else or that they didn't give it to anybody else. Correct. So the plaintiff could have alleged, I gave it to Mr. Roundtree and Mr. Roundtree gave it to person X. He did not do that. We know, Mr. Tully, that the chain of access ends with Mr. Tully as to him. But as to the other two- We don't know. We don't know. He did not allege. He stated that he could only speculate and then on appeal, he said it can be inferred that the A-list black television community is small and therefore it must have gotten there. This is the bare possibility of access that the Jason V. Fonda case rejected. It's also the, if you look at some of the district court cases we cited, including the Blumhouse case and Metafilm, which this court has cited several times, this is putting it into a place where someone might have come in contact with it without it identifying how. Ultimately though, and so the plaintiff's admissions foreclose the possibility that there are facts that could be alleged on access. But ultimately it doesn't matter because this court can, should, and does routinely assess substantial similarity of protectable expression for literary works as a matter of law. And the district court properly did that here. Now- Will an expert aid in that process, as plaintiff's counsel argues? Not in this instance, Your Honor, because if you compare the works and compare the expression in the works, they are different. But see, the problem I'm having with that argument too is that the work that was allegedly copied is a treatment, which necessarily is not going to be all fleshed out into season one of a television show, right? But yet there are a lot of elements that are very similar, if not strikingly similar in the treatment and in the show. So there are ideas that are similar, but what we're looking at here is expression. Right, exactly. I've written several opinions on that. Yes, you have. I'm sure you know. As I'm well aware. And here are the distinctions. So if you gave this treatment to 100 different writers, you would get 100 different shows and none of them would be Empire. But they could all be derivative works. They could all be derivative of the treatment, right? Which is what the claim is. Yes, however, if those works appropriated the expression. So for example, what we have here is the idea of a successful African-American owning a record company, an entertainment company. That's our idea. That's the idea. Okay, I will go along with that. Now let's look at how they're expressed. Right. In Plaintiff's Treatment, King Solomon is a Harvard graduate. There is no indication that he was ever an artist himself. He's married to his childhood sweetheart who seems not to have any involvement in the business. And he has this mafia connection with his rival. And then he has these relationships with these three children. All of those things are different in Empire. The only thing they share is their race and their ownership. You're focused on all the differences and you should be. Right. Right, but the counsel for us, you're right to get up and focus on all the similarities. Yes, except that the similarities are not expression. The similarities, we do not have a character like, for example, with the characters, we do not have a character like Superman, like Rocky Balboa, a protectable character. We have the outlines of the character. What we have in Lucius Lion, what we have in Cookie Lion are fully formed characters. And those similarities are just of the unprotectable elements of the character. Same with plot. We don't have the same plot here. There's very little plot in the Treatment at all. But what isn't in the Treatment is Lucius's terminal disease. We don't have Cookie being an informant. We don't have Cookie's relationship with her children. That's not the same. We don't have anything about the coming out story. And in fact, the similarity they try to draw between Jenny and Jamal is evidence that there isn't a similarity. The fact that they're children is basically it. We don't have, the Treatment itself is entitled only to thin protection because it contains very little expression at all. It contains ideas, and those ideas can be manifested in expression somewhere else. So certainly if somebody Xeroxed the opinion or the Treatment and tried to sell it, there'd be no question that that could be copyright infringement. But we're not there. And the thinner the protection on a work, the closer, the more identical the copying needs to be. And here, when you break it down into its component elements, as we're required to do, and as was done in Rentmeester, and as was done in Silas. If you look at Silas, for example, Silas is the case involving ballers. And it was a district court opinion, dismissed on 12b-6, and recently affirmed here. You had a very similar thing. You had, I believe it was a Treatment, it may have been a single screenplay against a season of a television show. You had the same kind of discussion of similarities. You had football players and what they do in their off seasons, and certain characters that could be kind of compared to each other. That's what we have here. And the court on 12b-6 below went through an extensive analysis, obviously without experts, and determined that there was not substantial similarity of protectable expression. The same is true here. If you then look at Rentmeester, Rentmeester affirmatively says you can do this analytical dissection on a 12b-6 motion. And in fact discusses that in a 12b-6 motion, or that for literary works, it is particularly, courts are particularly able to do this because a literary work can be divided up into its component parts. And those component parts here, if we look at plot, there is not a similarity of plot. The one sort of plot that exists in the Treatment, Jake getting out of prison, which itself is just an idea, and then going to Jenny's birthday party, and the hush money for the dark secret, and then finding his illegitimate daughter. That does not happen in Empire. It doesn't happen in Empire. And to the extent we want to say, well in one episode there's an illegitimate daughter, and in another episode somebody gets out of prison, and in another episode, Cookie demands half of the company she founded. That's the random list of similarities that even Metcalfe says you can't rely on. Metcalfe focused on a common pattern of similarities. And Metcalfe also has an admittedly high degree of access. We don't have that here. Even under the plaintiff's best argument, there is a possibility of access. They've not articulated the high degree of access that was found in Metcalfe. And so Metcalfe, in subsequent cases, have distinguished Metcalfe on precisely that ground, among others. Swirsky and Williams, which Appellant's Counsel also discussed, also don't apply here. And Swirsky is very clear that the extrinsic test, which works very well for literary works, and works for photographs, according to Rentmeester, is a poor choice for musical works. And actually, because there are so many ways to express, so many ways of expression in a musical work. And Swirsky goes on for about a page and a half about all the different ways that courts have assessed similarity in musical works. And in that context, Swirsky says, first, well, literary works are more easily broken down into a small number of discrete elements. But that for that musical work, under that context, they needed an expert. Williams picks up on that and says that it's unreasonable to expect a judge to be fluent in musicology, much less have the ability to conduct an independent musicological analysis. And on that ground, said that experts are particularly useful for music. But even then, neither case says you can't dismiss an infringement claim involving music. Music, being its own language, makes it harder. But one could find, for example, that Philip Glass's four minute 33 seconds, which is a silent piece of music, doesn't infringe Beethoven's night. And here, we're almost there. We have an idea for a television show. The last case I want to raise, as I'm running out of time, is Rice versus Fox Broadcasting. And I think Rice is really important. Because in Rice, which Swirsky cites, in Rice, the court said that the plaintiff actually had offered an expert. And the expert was rejected by the court because the similarities, like the similarities here, were based on stock characters and sans affair. In other words, the expert performed a comparison. The district court rejected that comparison as unhelpful. And then determined that there was not substantial similarity of protectable expression as a matter of law. And this court affirmed that holding because it is the district court's job, under Twombly and Iqbal, to determine whether there is a plausible claim of substantial similarity. And in doing that, according to Iqbal, the court applies its judgment and experience in assessing those similarities. We have here, on a treatment, a thin protection on a set of ideas. Those ideas are not expressed in the same, to the extent those ideas are protectable. And for example, the idea of a daughter who wants to be a model and an actress is not. The idea of a son who went to business school is not protectable. There's not enough there. If you look at, those are not substantially similar as to what you see in Empire. I see I'm out of time. If you have any other questions, otherwise we'd submit. No. And I'll give you a couple of minutes to rebut and thank you for doing this pro bono point by the court. Thank you very much. Thank you, your honors. The substantive law of copyright on access in this court's circuit has routinely said circumstantial evidence suffices. Iqbal has not created such a watershed event in copyright law that suddenly circumstantial evidence is not enough. And so here, what's pled is enough on access, even if it's circumstantial on that last step to justify getting into discovery. The second point that's important, we're not saying that, and it's not our argument at all, that this court or a court can never adjudicate these questions at Rule 12. Rentmaster, I believe, is the outer limit of when a court should say, we are going to allow this to happen at Rule 12. And one of the very important things about the Rentmaster cases, they did the extrinsic test on every one of the objective factors for photography. The majority at least said they're 100% dissimilar. And it cited 102B because it was dealing with statutory non-copyright material, a human pose, which obviously you're familiar with Judge Wardlock from the Yoga case. The third point is, counsel says the only similarity here is ideas, it's just ideas, ideas, ideas, but it's not. There's more than just ideas. It's not the idea of a black billionaire hip hop mogul. It is the tangible expression about that character and the nature of his relationship with his kids defines him, one of the kids defying him to go to the antagonist defines him and it defines the kid. And what's very important is you have another antagonist that the district court said it's not even a foil as in their work and that's the criminal drug relative who is decidedly a foil that comes back to set up this dramatic tension. And it's someone who's a family member where there's no love because they're willing to blackmail the protagonist. All of that is expression and the court has never held in the extrinsic test and this is why Shaw is important. You don't have to have a character that the character standing alone would merit the quantum of copyright ability to constitute expression. It's the character as one of the factors and that's why when you look at Shaw, the equalizer, it was just a well-dressed guy who wore a tuxedo who wanted to equalize the odds and the court said that's enough. This is why, again, I urge the court to please go to the Star Wars case and the Battlestar Galactica case from this court because there it talked about a mysterious leader of the democratic forces who had some magical powers. I mean, it sounds like a wizard, but this court said it was delineated enough with a bunch of other similarities to look like it belonged before a jury and that's why it's so important to make sure that when you have this number of similarities stacked on top of one another, you don't just say as a matter of law, it's random and it's not a pattern within Metcalf unless the court has anything further we would submit. All right, thank you very much, counsel. Astor White versus Strong will be submitted.
judges: Wardlaw, Nguyen, Owens